**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| **BANK OF NEW YORK MELLON,** | : | |
| | : | Case No. 2:15-CV-02662 |
| Appellant, | : | |
| | : | **JUDGE ALGENON L. MARBLEY** |
| v. | : | |
| | : | |
| **RICHARD L. WOLFE,** *et al.*, | : | |
| | : | |
| Appellees. | : | |

**OPINION & ORDER**

This matter is before the Court on Appellant Bank of New York Mellon's ("the Bank") appeal from an order of the Bankruptcy Court. (Doc. 1.) Appellees Richard L. Wolfe and Helen E. Wolfe ("the Debtors" or "the Wolfes") have moved to dismiss the appeal for lack of jurisdiction on the ground that the Bankruptcy Court did not issue a final appealable order. (Doc. 9.) Both parties have also filed motions to file additional briefing on the issue of jurisdiction. (Docs. 2, 8.) The Court **GRANTS** the Bank's Motion for Leave to File *Instanter* a Reply (Doc. 2) and the Debtors' Motion for Leave to File *Instanter* a Supplemental Memorandum in Opposition. (Doc. 8.) The Court agrees with the Debtors that the Bankruptcy Court's order was not a final appealable order. Further, the Court declines to exercise its jurisdiction to hear an interlocutory appeal under 28 U.S.C. § 158(a)(3). Therefore, the Debtors' Motion to Dismiss is **GRANTED**.

**I.  BACKGROUND**

This case arises from a dispute over a piece of real property in Lancaster, Ohio ("the Property"). On October 26, 2006, William Joseph Casey executed a promissory note in the amount of $186,400.00 in favor of Countrywide Home Loans, Inc. ("Countrywide") and also

1

executed a mortgage granting MERS, as mortgagee and nominee to Countrywide, a security interest in the property. (Bankruptcy Court Record on Appeal, Doc. 4-19 at 267-285.) The mortgage was assigned to the Bank of New York Mellon in July 2010. (*Id.* at 286-87.) The mortgage was apparently never recorded. (*Id.* at 73-74.)

In November 2007, the Wolfes found the Property abandoned and have resided there ever since. (Doc. 4-27 at 2.) According to the Wolfes, they have paid real estate taxes, maintained homeowner insurance, and made improvements to the Property since they began living there in 2007. (*Id.*) On July 20, 2010, the Bank filed a declaratory judgment action in the Fairfield County Court of Common Pleas against the Wolfes, Casey, and the Starkey Family Revocable Living Trust, seeking a judicial determination of the rights and obligations of the parties to the Property. (Doc. 4-19 at 5-35.) On December 21, 2010, the Court of Common Pleas held that title to the Property was vested with Casey and that the Bank was the assignee of the unrecorded mortgage and thus had an equitable lien on the Property. (*Id.* at 74-75.) The trial court also specifically declared that the Wolfes "have no legal or equitable interest" in the Property. (*Id.*) The Wolfes did not appeal the trial court's December 21, 2010 final judgment entry. Instead, on March 7, 2011, Casey executed a quitclaim deed to the Wolfes. (*See* Doc. 4-21 at 10.)

Thereafter, on March 30, 2011, the Wolfes filed a motion for relief from judgment with the Court of Common Pleas. In the motion, the Wolfes sought relief under Rule 60(B)(4) and (5), arguing that they held title to the Property and had made improvements to the Property; therefore, they held a "legal" interest in the Property and equitable relief from judgment was appropriate. (Doc. 4-21 at 4-8.) On May 23, 2011, the trial court denied the Wolfes' motion for relief. (*Id.*) The Wolfes appealed the denial of their motion to the Ohio Court of Appeals for the Fifth District, and the appeals court affirmed the trial court's decision. (*Id.* at 9-13.)

On July 5, 2012, the Bank filed a foreclosure action in the Fairfield County Court of Common Pleas against Casey, the Wolfes, and others. (Doc. 4-19 at 80-83.) The court granted the Bank a judgment entry and decree of foreclosure. (*Id.* at 265.) The Wolfes appealed and the Ohio Fifth District Court of Appeals affirmed, finding that the Debtors were not *bona fide* purchasers and that their arguments opposing foreclosure were barred by res judicata because the validity of the mortgage was fully litigated between the parties in the 2010 declaratory judgment action. (Doc. 4-21 at 14-23.)

Next, the Wolfes filed an action against the Bank in this Court, challenging the Bank's interest in the Property. (*See Wolfe v. The Bank of New York Mellon*, No. 14-cv-366.) This Court denied the Debtors' motion for a temporary restraining order and ultimately dismissed their claim against the Bank on the ground that it was barred by res judicata. (No. 14-cv-366, Docs. 20, 30.) Shortly thereafter, the Debtors filed a petition under Chapter 13 in the Bankruptcy Court. (Chapter 13 Voluntary Petition, Doc. 4-1.) They subsequently filed a Chapter 13 Plan (Doc. 4-3) and the Bank objected to confirmation of the Plan. (Doc. 4-5.) In its objection, the Bank stated that it was a "secured creditor" because "[a]t the time of filing, Debtors were indebted to Countrywide Home Loans, Inc. by virtue of an Interest Only Adjustable Rate Note and Mortgage . . . on certain real property," and Countrywide subsequently assigned its rights in the mortgage to the Bank. (*Id.* at 1, 2.) On September 24, 2014, the Bank withdrew its objection, stating no reason for the withdrawal but again identifying itself as a "secured creditor." (Doc. 4-8.) The Bank now explains that it had realized that the objection was improper because its right to payment was from Casey, the mortgage holder, not from the Debtors and, therefore, it was not a secured creditor of the Debtors. (*See* Doc. 4-29 at 7.)

3

On the same day it withdrew its objection, the Bank filed a motion for relief from the automatic stay under 11 U.S.C. § 362(d)(1) on the ground that the state court had determined that the Debtors had no interest in the Property and that the Bank, as the assignee of a mortgage encumbering the property, was entitled to foreclose. (Doc. 4-9 at 1-2.) The Bankruptcy Court denied the motion, without prejudice, due to deficiencies in the Bank's filing. (Doc. 4-10.) On September 30, 2014, the Bankruptcy Court confirmed the Debtors' Chapter 13 Plan. (Doc. 4-12.) Shortly thereafter, the Bank filed a second motion for relief from stay (Doc. 4-13.) and a motion for sanctions against the Debtors (Doc. 4-14) and the Bankruptcy Court held a hearing. The Bankruptcy Court ordered supplemental briefing on the questions of: (1) whether the Bank was bound by the confirmed Chapter 13 plan; (2) whether the Debtors have a legal or equitable interest in the property because they are in possession of a recorded deed and/or based on improvements made and taxes paid during their occupancy; and (3) whether an adversary proceeding should be commenced under Federal Rule of Bankruptcy Procedure 7001(2), (7), and (9). (Doc. 4-22.)

The Bankruptcy Court issued its Order Regarding Motion for Relief from Stay on June 19, 2015. (Doc. 4-27.) First, the Bankruptcy Court determined that the Bank was a creditor because it held a claim against the Debtors that "arose at the time of or before the order for relief (bankruptcy filing)." (*Id.* at 3 (quoting 11 U.S.C. § 101(10)(A)).) The Bankruptcy Court further found that the parties were bound by the prior state court rulings, which held that the Bank had a $186,400.00 equitable lien on the Property, under the terms and conditions of the unrecorded mortgage of October 26, 2006, and that before the bankruptcy filing, the Debtors had no legal or equitable interest in the Property that could impede foreclosure. (*Id.* at 4-5.) The Bankruptcy Court rejected the Debtors' argument that the Property should vest in them free of the Bank's

4

equitable lien but nevertheless found that the Debtors held interests in the Property subject to the Bank's equitable lien because no foreclosure sale had occurred and Debtors had paid taxes, maintained insurance, and made improvements to the Property. (*Id.* at 6.) Finally, the Bankruptcy Court turned to the issue of whether there were sufficient bases to lift the stay, stating:

> All this leads to the present quandary of what to do with the muddle, in which both parties come to the table equally victimized by their own action or inaction. For the Debtors' part, they just happened upon an "abandoned" home, obtained not one but two recorded quitclaim deeds, and then live there for eight years without paying a dime to the [Bank]. Even after multiple rulings addressed their interests, Debtors still file a bankruptcy plan designed to vest the property in them, without any provision for paying or otherwise addressing [the Bank's] equitable lien.
>
> On the flipside, [the Bank] somehow fails to record the original deeds and mortgage dating back to 2006, and inexplicably loses the documents. To top it off, [the Bank] then waits three years after the Debtors move into the home to file suit in state court. Next, when the Debtors reach the bankruptcy court, [the Bank] strangely files and then withdraws its confirmation objection.
>
> To both parties, addressing before this Court your relative interests up front and prior to confirmation, was the correct path all failed to pursue. As a direct consequence, the Court stitched together the following measures to bring a measure of clarity and most importantly closure.

(*Id.* at 7.)

The Bankruptcy Court then ordered the Debtors to file an itemized statement "of real estate taxes and insurance premiums paid and improvements made to the home since occupancy." (*Id.*) The Bankruptcy Court stated that after consideration of objections it would issue a separate judgment order in favor of the Debtors under the Ohio Occupying Claimant statute, Ohio Revised Code § 5303.08, and that the Bank would then be "granted leave to upload an order lifting the stay to complete fully the foreclosure process." (*Id.* at 7-8.) As an alternative to receiving the reimbursement for their costs, the Bankruptcy Court granted Debtors leave to file one amended plan, accompanied by a signed loan commitment to finance the home at the

5

bankruptcy appraisal value of $191,000.00. (*Id.* at 8.) The Bankruptcy Court would then rule on the amended plan, including any objections, and then the Bank would be "granted leave to upload an order lifting the stay to complete fully the foreclosure process." (*Id.*) Finally, if the Debtors failed to elect either option by July 31, 2015, the Bank would be "granted leave to upload an order lifting the stay to complete fully the foreclosure process." (*Id.*)

The Bank filed a Motion for Leave to Appeal the Bankruptcy Court's June 19, 2015 Order (Doc. 4-29) and also filed a Notice of Appeal in this Court.[1] (Doc. 1.)

## II. JURISDICTION

As a preliminary matter, the Bank moves for leave to file *instanter* a reply in support of its motion for leave to appeal[2] (Doc. 2) and the Debtors move for leave to file *instanter* a supplemental memorandum in opposition to the Bank's motion for leave to appeal. (Doc. 8.) Neither motion is opposed, and for good cause shown the Court **GRANTS** both motions.

### A. Final Order Under 28 U.S.C. § 158(a)(1)

Under 28 U.S.C. § 158(a), a district court has jurisdiction to hear appeals "from final judgments, orders, and decrees" of the bankruptcy court. 28 U.S.C. § 158(a)(1). The district court also has jurisdiction to hear appeals from interlocutory orders at its discretion. 28 U.S.C. § 158(a)(3). The Bank argues that the Bankruptcy Court's order was final and, in the alternative,

---

[1] When the finality of a bankruptcy court order is uncertain, an appellant should file both a notice of appeal in the district court and a motion for leave to appeal in the bankruptcy court, even though only the district court can grant the relief requested. *See In re City of Desert Hot Springs*, 339 F.3d 782, 787 (9th Cir. 2003). The Bank did so.

[2] The Bank's motion to file a reply in support of its motion for leave to appeal addresses Debtors' argument, put forth in their Response to the Bank's Motion for Leave to Appeal (Bankr. Doc. 68), which argued that the Notice of Appeal from the Bankruptcy Court Order was untimely. The Bank insists that the Notice was timely because the deadline to appeal fell on a federal holiday and the Notice was filed on the first business day after that holiday, which comports with the filing requirements of the Bankruptcy Rules. *See* Fed. R. Bankr. P. 9006(a)(1)(C). The Debtors have now conceded that the appeal was timely filed. (Doc. 8 at 3.) Therefore, the timeliness of the appeal is no longer an issue before the Court. (Doc. 8 at 3.)

that even if it was not final the Court should exercise jurisdiction over the interlocutory appeal. The Debtors disagree on both points.

The Sixth Circuit has held that the finality requirement is considered "in a more pragmatic and less technical way in bankruptcy cases than in other situations." *In re Cottrell*, 876 F.2d 540, 541-42 (6th Cir. 1989) (quoting *In re Amatex Corp.*, 755 F.2d 1034, 1039 (3d Cir. 1985)).  In the bankruptcy context, the concept of finality "should be viewed functionally." *Id.* at 541 (quoting *In re Amatex Corp.*, 755 F.2d at 1039).  This relaxed standard is appropriate because:

> Bankruptcy cases frequently involve protracted proceedings with many parties participating.  To avoid the waste of time and resources that might result from reviewing discrete portions of the action only after a plan of reorganization is approved, courts have permitted appellate review of orders that in other contexts might be considered interlocutory.

*In re Dow Corning Corp.*, 86 F.3d 482, 488 (6th Cir. 1996) (quoting *A.H. Robins Co. v. Piccinin*, 788 F.2d 994, 1009 (4th Cir. 1986)).  Accordingly, if a bankruptcy court order "'finally dispose[s] of discrete disputes within the larger case,' it may be appealed immediately." *Id.* (quoting *In re Saco Local Dev. Corp.*, 711 F.2d 441, 444 (1st Cir. 1983)).  The bankruptcy court's order "need not resolve all of the issues in the proceeding, but it must finally dispose of all the issues pertaining to a discrete dispute within the larger proceeding." *WCI Steel, Inc. v. Wilmington Trust Co.*, 338 B.R. 1, 8 (N.D. Ohio 2005) (quoting *In re Perry*, 391 F.3d 282, 285 (1st Cir. 2004)).  The Seventh Circuit has characterized this relaxed standard as follows:  "Where an order terminates a discrete dispute that, but for the bankruptcy, would be a stand-alone suit by or against the trustee, the order will be considered final and appealable." *In re Rimsat, Ltd.*, 212 F.3d 1039, 1044 (7th Cir. 2000).

7

The Debtors agree with the Bank that the Bank's motion for relief from the automatic stay was a discrete dispute before the Bankruptcy Court. (Doc. 13 at 3.) They take issue, however, with the Bank's contention that the order *resolved* that discrete dispute. (*Id.*)

The Bank argues that although the Bankruptcy Court's order did not resolve all of the issues between the Bank and Debtors, it did dispose of two discrete disputes: first, the Bankruptcy Court determined that the Bank is a "creditor" of Debtors and is thus bound by their Chapter 13 Plan; and second, the Bankruptcy Court held that the Bank's mortgage was not superior to the Debtors' interest in the Property, which the Bank interprets as a determination that it was not entitled to *unconditional* relief from the stay. (Doc. 12 at 4-5.)

This Court finds that the Bankruptcy Court's order did not contemplate disposing of a discrete dispute. The order laid out three options for how the Debtors could proceed, and it indicated the relief that it would grant depending on the option Debtors selected, but the Bankruptcy Court did not actually grant relief in the order. (*See* Doc. 4-27 at 7-8.) The order required further action to be taken by the parties, and thus it cannot be considered a final order. The Court finds persuasive the reasoning of *In Re Saco Local Development Corp.*, a First Circuit case where a bankruptcy court had determined that a creditor was entitled to priority payment of an employee group health insurance plan. 711 F.2d at 442. The bankruptcy court had not, however, determined how much of the creditor's $106,000 claim would receive priority treatment. *Id.* at 443. After an exhaustive review of the history of bankruptcy appellate jurisdiction, the First Circuit found that the bankruptcy court's order was final, concluding that:

> [A]s long as an order allowing a claim or priority effective settles the amount due the creditor, the order is 'final' even if the claim or priority may be reduced by other claims or priorities. An order that expressly conditions one claim or priority on another is no less final. It does not introduce an element of uncertainty or contention to an order where none would otherwise would exist; it merely recognizes the legal and practical realities of bankruptcy proceedings.

*Id.* at 448. In *Saco*, the court found it logical that placing conditions on a claim or priority does not render an order non-final because "[a]lmost without exception, the amount that any one creditor ultimately receives in bankruptcy depends on the result of litigation by other creditors, regardless of whether the order allowing the creditor's claim expressly conditions the award on the outcome of the disputes." *Id.* at 447-48. The conditions the Bankruptcy Court included in its order are different in kind from those at issue in *Saco* because the priority determination in Saco rested almost entirely on the outcome of litigation between the trustee and third parties, rather than further litigation involving the particular creditor in the discrete dispute. *See id.* at 446 ("In short, the order does not leave the *court* with only ministerial steps to determine the exact amount of the priority, but it appears to leave [the creditor] with nothing more to do than await the outcome of third-party litigation." ). Here, the Bankruptcy Court's order does not leave the Bank "with nothing more to do"; instead, the Bank was granted the ability to object to the Debtors' amended plan or to their claimed equitable interests in the Property. Indeed, it has done so, and the Bankruptcy Court has set a trial date on the matter of the Debtors' Election and Itemized List as it Relates to the Order Regarding Motion for Relief from Stay. (*See* Bankr. Doc. 85.)

  A recent Supreme Court case, while not directly on point, sheds light on the concept of "proceedings" within a bankruptcy case and bolsters this Court's conclusion that the Bankruptcy Court's order was not final. In *Bullard v. Blue Hills Bank*, the Supreme Court dismissed for lack of jurisdiction a debtor's appeal of a bankruptcy court order denying confirmation of the debtor's proposed repayment plan. 135 S. Ct. 1686, 1690 (2015). The Court determined that the order was not final because the debtor remained free to propose another plan. *Id.* at 1694. Importantly, the Court defined the relevant appealable "proceeding" as "the process of

9

attempting to arrive at an approved plan that would allow the bankruptcy to move forward.  This is so, first and foremost, because only plan confirmation—or case dismissal—alters the status quo and fixes the rights and obligations of the parties."  *Id.* at 1692.  The Court further reasoned, in support of its decision that the denial of confirmation was not a final order, that, with regard to the obligations of the parties:  "Denial of confirmation with leave to amend . . . changes little.  The automatic stay persists.  The parties' rights and obligations remain unsettled."  *Id.* at 1693.  Albeit under a slightly different procedural posture than the denial of a plan confirmation, the Bank and the Debtors' rights and obligations remain similarly unsettled here.

The case law on which the Bank relies does not help its cause.  The Bank cites *In re Sun Valley Foods Co.*, in which the Sixth Circuit held that a bankruptcy court order lifting the automatic stay was final.  801 F.2d 186, 189 (6th Cir. 1986).  Although the Sixth Circuit cited approvingly to a Ninth Circuit decision that held that "decisions of the bankruptcy courts *granting or denying relief* from the automatic stay . . . are final decisions reviewable by this court," *id.* at 190 (quoting *In re Kemble*, 776 F.2d 802, 805 (9th Cir. 1985)) (emphasis added), the Bankruptcy Court's order here does not clearly grant or deny relief from the stay and, therefore, does not dispose of the stay order.  Rather, it merely lays out the remedies it plans to grant to the parties based on certain additional actions by the parties.

The Bank fares no better in its reliance on *Moran v. Official Committee of Administrative Claimants*, No. 05-cv-2285, 2006 WL 3253128 (N.D. Ohio Nov. 8, 2006).  There, a district court held that an appeal of a bankruptcy court's standing order did not "conclusively determine substantive rights" and thus was not final.  *Id.* at *2 (quoting *In re Delta Servs. Indus.*, 782 F.2d 1267, 1270 (5th Cir. 1986)).  Specifically, the standing order merely allowed one of the creditors to pursue litigation against the officers of the debtor in the district court.  *Id.*  Therefore, the

10

district court found that "no discrete dispute ha[d] been decided" because the standing order was only "a preliminary step in some phase of the bankruptcy proceeding and does not directly affect the disposition of the estate's assets." *Id.* (quoting *In re Delta Servs. Indus.*, 782 F.2d at 1270). The Bank's argument that its substantive rights were conclusively determined because the Bankruptcy Court deemed it a creditor is unavailing, because the determination of creditor status is more akin to a "preliminary step" in the proceeding. Given the conditional nature of the relief and the ongoing nature of the proceedings to determine the actual amount the Bank owed the Debtors, the Court finds that the order did not conclusively determine the Bank's substantive rights. The Court lacks jurisdiction to hear the appeal under 28 U.S.C. § 158(a)(1).

### B. Interlocutory Order Under 28 U.S.C. § 158(a)(3)

Under 28 U.S.C. § 158(a)(3), district courts have discretion to review a non-final order of a bankruptcy court. Because § 158(a)(3) does not provide criteria to guide a court's discretion, federal courts have adopted the standard articulated for interlocutory appeals from district courts to courts of appeal under 28 U.S.C. § 1292(b), namely:

> (1) the question involved is one of law; (2) the question is controlling; (3) there is substantial ground for difference of opinion respecting the correctness of the bankruptcy court's decision; and (4) an immediate appeal would materially advance the ultimate termination of the litigation.

*Wicheff v. Baumgart*, 215 B.R. 839, 844 (6th Cir. BAP 1998) (citing *Vitols v. Citizens Banking Co.*, 984 F.2d 168, 170 (6th Cir. 1993)). The Debtors do not contest the presence of the third factor but argue that the issue on appeal is not one of controlling law and that an immediate appeal would not advance the ultimate termination of the litigation. (Doc. 8-1 at 8-11.)

The appellant bears the burden of establishing exceptional circumstances that justify a departure from the normal course of postponing review until after entry of a final judgment. *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 475 (1978). "[D]oubts regarding appealability

should be resolved in favor of finding that the interlocutory order is not appealable." *United States v. Stone*, 53 F.3d 141, 143-44 (6th Cir. 1995) (quotation marks and citation omitted) (alterations omitted); *see also United States Trustee v. PHM Credit Corp.*, 99 B.R. 762, 767 (E.D. Mich. 1989) (noting that the district court "should exercise [its] discretion sparingly, since interlocutory bankruptcy appeals should be the exception, rather than the rule").

The Bank argues that that the following issues are controlling questions of law: (1) whether the Bank holds a "claim" and is, therefore, a "creditor" bound by the Debtors' Plan; and (2) whether the Debtors are entitled to reimbursement of the amount they paid in taxes, insurance, and improvements to the Property under Ohio Revised Code § 5303.08. (Doc. 4-29 at 12.) The Debtors urge the Court to find that no controlling issue of law is presented here, because the Bankruptcy Court's finding that the Bank was a creditor did not ultimately control the outcome of the litigation, pointing out that the order contemplated eventually lifting the stay, which was the Bank's desired result. (Doc. 8-1 at 9.) Therefore, they contend, the issue of whether the Bank was a creditor cannot be considered controlling. Second, the Bankruptcy Court has not yet found what amount, if any, the Debtors are entitled to receive from the Bank to compensate them for what they have spent on taxes and improvements to the Property.[3] (*Id.* at 10.) Finally, the Debtors urge the Court to view the conditions set by the Bankruptcy Court as akin to an order partially denying summary judgment due to the presence of factual disputes that must go to trial. (*Id.*)

A "pure" or "abstract" question of law of the type envisioned in § 1292(b) is one that is "suitable for determination by an appellate court without a trial record." *In re Gray*, 447 B.R. 524, 534 (E.D. Mich. 2011) (quoting *Ahrenholz v. Bd. of Trs. of Univ. of Ill.*, 219 F.3d 674, 677

---

[3] As noted above, the Bankruptcy Court has scheduled a trial in April 2016 to determine this question. (*See* Bankr. Doc. 85.)

(7th Cir. 2000)). Further, "[a] legal issue is controlling if it could materially affect the outcome of the case." *In re City of Memphis*, 293 F.3d 345, 351 (6th Cir. 2002); *see also In re Watson*, 309 B.R. 652, 659 (1st Cir. BAP 2004) ("A question of law controls the outcome of the underlying case if no alternate theory exists on which the party could succeed."). The Court agrees with the Debtors that the question presented on appeal is not a controlling issue of law. The question of whether the Bank is a creditor does not control the disposition of the stay motion. And although the Bank is correct that a determination by this Court that the Bank owes *no* reimbursement payment to Debtors for the taxes and other payments they have made would be controlling, a determination that the Bank does owe reimbursement to the Debtors would not, because the amount of such damages is a mixed question of law and fact, to be determined by the Bankruptcy Court and not appropriate for a reviewing court to decide at this stage.

An immediate appeal is also unlikely to materially advance the ultimate termination of the litigation. The Bank contends that an order on the merits would not affect any other substantive or procedural issue in the broader bankruptcy case and, therefore, could proceed separately while the other matters in the bankruptcy case proceed below. (Doc. 4-29 at 17.) This characterization of the proceedings is inaccurate. It makes little sense to grant an appeal on an issue that could be more efficiently resolved in the bankruptcy court. As the Sixth Circuit noted in *Cardwell v. Chesapeake & Ohio Railway Co.*, in explaining the rationale for the general rule against interlocutory appeals:

> The granting of an interlocutory appeal in the present case would not "materially advance the ultimate termination of the litigation." Many months would be required before the case would be reached for argument on the congested docket of this court. If we grant the appeal and then should affirm the order of the district court . . . the case then would be remanded to the district court for trial on its merits. On the other hand, it would appear that only a few days would be required for a jury trial and final disposition of the case in the district court. This procedure, which would avoid a piecemeal appeal, is preferable except in the extraordinary type of case contemplated by § 1292(b).

13

504 F.2d 444, 446 (6th Cir. 1974).  Here, the proceeding to determine for what costs, if any, the Bank must reimburse the Debtors can be resolved expeditiously in the Bankruptcy Court, at which point an appeal could follow.  Such a sequence of events would avoid the approach of piecemeal appeals that is disfavored under § 1292(b).

Moreover, as the Debtors point out, the Bank has sought sanctions against the Debtors in the form of a bar against future bankruptcy filings acting as a stay on the foreclosure sale of the Property, and although the Bankruptcy Court indicated that it would ultimately enter such an order, it has not yet done so.  (Doc. 8-1 at 10-11.)  Such an order could ultimately lead to a separate appeal by the Debtors.  Therefore, a delay of the appeal until the Bankruptcy Court has definitively resolved the dispute between the Bank and the Debtors would avoid the risk of piecemeal appeals that could result both from the Bankruptcy Court's eventual order of reimbursement of costs to the Debtors and a potential sanctions order against Debtors.  For these reasons, the Court declines to hear this interlocutory appeal and **GRANTS** the Debtors' Motion to Dismiss.

### III.    CONCLUSION

For the foregoing reasons, the Court **GRANTS** Bank of New York Mellon's Motion for Leave to File *Instanter* a Reply (Doc. 2) and the Debtors' Motion for Leave to File *Instanter* a Supplemental Memorandum in Opposition.  (Doc. 8.)  The Debtors' Motion to Dismiss is **GRANTED**.  (Doc. 9.)  This case is **DISMISSED**.  The clerk is directed to enter Judgment for the Debtors.

**IT IS SO ORDERED.**

      s/ Algenon L. Marbley  
**ALGENON L. MARBLEY**  
**UNITED STATES DISTRICT JUDGE**

**DATED: March 8, 2016**